UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN WOLDING,

       Plaintiff,

v.                                                     Case No. 10-10644
                                                     Honorable Patrick J. Duggan

RICHARD CLARK,

       Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on November 16, 2010.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
                      U.S. DISTRICT COURT JUDGE

On February 12, 2010, Plaintiff John Wolding ('Wolding") filed this action against Defendant Richard Clark ("Clark"), his partner in various "nonstandard auto insurance" corporations. In an Amended Complaint filed on September 28, 2010, Wolding alleges the following claims against Clark: (1) violation of the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (2) "violation of fiduciary duties and oppression of minority shareholder by controlling shareholder" pursuant to Michigan Compiled Laws Section 450.1489; (3) fraud; and (4) "injunctive relief against Defendant Clark." Presently before the Court is Clark's supplemental motion to dismiss or strike Counts Three and Four of Wolding's Amended Complaint, filed pursuant to Federal Rules of Civil Procedure

12(b)(6) and (7) on October 8, 2010. Wolding failed to file a response to the supplemental motion; however, as discussed *supra*, he did respond to Clark's initial motion to dismiss or strike. For the reasons that follow, the Court denies Clark's motion.

I. **Standard for Motion to Dismiss**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests whether a legally sufficient claim has been pleaded in the complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, – U.S. – , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 555, 570, 127 S. Ct. 1955, 1974 (2007)). A claim is facially plausible when a plaintiff pleads factual content that permits a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). This plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

When assessing whether a plaintiff has set forth a "plausible" claim, the district court must accept all of the complaint's factual allegations as true. *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Even so, "the pleading must contain more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

cognizable right of action." *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. at 1965. A plaintiff has the duty to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, – U.S. – , 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965).

In the context of claims that require proof of fraud, the plaintiff must meet an elevated standard of pleading. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy the requirements of Rule 9(b), the Sixth Circuit "requir[es] a plaintiff, at a minimum, to 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey v. Foamex LP*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1395 (W.D. Mich. 1992)). However, "[t]he threshold test is whether the complaint places the defendant on 'sufficient notice of the misrepresentation' allowing the defendant[] to answer, addressing in an informed way [the] plaintiffs [sic] claim of fraud.'" *Id.* at 162 (quoting *Brewer v. Monsanto Corp.*, 644 F. Supp. 1267, 1273 (M.D. Tenn. 1986)).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7) turns on whether the plaintiff has failed to name an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). The Sixth Circuit has articulated a three-step process for determining

3

whether a party is indispensable to an action under Rule 19. *Keweenaw Bay Indian Cmty. v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993) (citing *Local 670 v. Int'l Union, United Rubber, Cork, Linoleum, and Plastic Workers of Am.*, 822 F.2d 613, 618 (6th Cir. 1987)). First, the court must determine whether the absent party is necessary to the action and should be joined if feasible. *Id*. (citing Fed. R. Civ. P. 19(a)). Second, the court must determine if the party can be joined. *Id*. at 1345-46. If joinder is not feasible, the court must determine whether the action should proceed in the party's absence or be dismissed. *Id*. (citing Fed. R. Civ. P. 19(b)).

## II. Factual and Procedural Background

According to Wolding's Amended Complaint, he and Clark began operating as partners in the sale of certain income-based nonstandard auto insurance in or around 1989. (Am. Compl. ¶ 8.) In 1993, Wolding and Clark formed several corporations for the purpose of selling nonstandard auto insurance and franchising insurance agencies under the trade name "Look!" (*Id*. ¶ 9.) These corporations included the following: Look! Insurance Agencies, Inc., SR Corporation of Canton, Inc., Look! Advertising Fund, Inc., A Cherry Hill Corporation, LIAC, Inc., and Look Printing, Inc. (collectively "parties' corporations"). (*Id*. ¶ 15.) Wolding and Clark each own 50% of the shares of these corporations. (*Id*.)

Wolding alleges that Clark "became increasingly manipulative, stubborn, aggressive and abusive towards [Wolding]." (*Id*. ¶ 25.) Prior to 2007, Wolding was residing in Florida and commuting to Michigan as required to perform his job functions

4

as sole board member and co-president of the parties' corporations. (*Id.* ¶ 26.) According to Wolding, Clark discouraged him from coming to Michigan, telling Wolding that his work could be done from Florida. (*Id.* ¶ 27.)

In Spring 2007, Wolding began to consider retirement because he had become eligible for Social Security Insurance ("SSI"). (*Id.* ¶ 28.) According to Wolding, at that time, he and Clark agreed that in the event either of them became eligible for SSI and decided to stop active employment, the retired individual would continue to receive dividends but would no longer receive salary. (*Id.* ¶ 29.) The remaining shareholder in that instance would receive additional compensation for undertaking additional employment responsibilities. (*Id.*) Wolding alleges that he and Clark further agreed that a retiring shareholder would continue as a 50% shareholder, board member, and officer of the companies. (*Id.* ¶ 30.) Wolding also alleges that during the discussions leading to this agreement, he and Clark agreed that a retiring shareholder could return to employment at any time; in fact, Wolding claims that Clark, while encouraging Wolding to retire, assured Wolding that he could return at any time if he chose to do so. (*Id.* ¶ 32.)

In May 2007, Wolding ceased active employment with the parties' corporations. (*Id.* ¶ 33.) Wolding alleges that since that time, Clark has exercised control of the parties' corporations in a manner that has favored himself and his family members to the detriment of Wolding. (*Id.* ¶ 39.) In his Amended Complaint, Wolding sets forth several "unilateral acts" by Clark that Wolding claims were detrimental to his interests, including but not limited to the following: refusing to provide documents to Wolding necessary for

him to monitor the operation of the companies and/or determine the value of his interest therein; pre-payment of expenses in contravention to previous policy having the effect of overstating payables and reducing dividends payable to Wolding; employing relatives at inflated rates of pay and/or without Board of Directors' authority; and directing corporate counsel to conduct an investigation into Plaintiff's activities in Florida. (*Id*.)

Wolding alleges that in Summer 2009, Clark directed the Bodman law firm (which Clark caused the companies to retain on or about June 13, 2007) to conduct an investigation into Wolding's personal life, including obtaining a credit report of and concerning Wolding. (*Id*. ¶ 40.) At the same time, Wolding alleges that Clark refused to provide him with company documents. (*Id*. ¶¶ 42-50.) Wolding further alleges that from Summer 2009 forward, Clark froze him out of the companies and unilaterally reduced Wolding's corporate dividends. (*Id*. ¶¶ 53-60.) Wolding claims that Clark's actions prevented Wolding "from having the benefit of his ownership of the shares in the companies including but not limited to resuming employment, frustrating any attempt to value his ownership interests and to prevent him from functioning as a member of the Board of Directors." (*Id*. ¶ 64.)

In response to Clark's actions, as indicated earlier, Wolding filed this lawsuit on February 12, 2010. In his initial complaint, Wolding alleged the same counts set forth in his Amended Complaint although he sought "injunctive relief, appointment of receiver, and [an] accounting" in "Count Four." On April 16, 2010, Clark filed a motion to dismiss Counts Two, Three, and Four of Wolding's complaint and to strike Wolding's jury

demand with respect to Counts Two and Four. In a response to the motion filed June 3, 2010, Wolding indicated that Count Four of his complaint "should be recast," as he intended in this count only to set forth the relief he is requesting if judgment is entered in his favor on any of his remaining claims. Wolding also acknowledged that he had a right to a jury trial only with respect to Count Three of his complaint. Wolding otherwise disputed the arguments for dismissal set forth in Clark's motion.

At a September 21, 2010 hearing on Clark's motion to dismiss or strike, this Court directed Wolding to file an Amended Complaint consistent with his response and granted Wolding permission to thereafter filed a renewed motion to dismiss. Wolding filed an Amended Complaint on September 28, 2010; Clark filed a supplement to his motion to dismiss on October 8, 2010.

### III. Clark's Arguments

In his supplemental motion, Clark seeks dismissal of Wolding's fraud claim (Count Three), arguing that Wolding fails to state his claim with sufficient particularity as required under Federal Rule of Civil Procedure 9(b). Clark further argues that Wolding's claim must be dismissed because Wolding improperly relies on only unfulfilled promises of future conduct and could not reasonably rely on the alleged promises because they are contradicted by a written agreement entered into by the parties in early January 2008 as shareholders of Look! Insurance Agencies, Inc. Lastly with respect to this claim, Clark argues that the alleged oral promises are not enforceable pursuant to Michigan's statute of frauds, Michigan Compiled Law Section 566.132, in that alleged oral promises for

7

employment longer than a year must be in writing.

Clark also seeks dismissal of Wolding's injunctive relief "claim" (Count IV), contending as he did in his earlier motion that Wolding fails to join essential parties, i.e. the parties' corporations. As Clark points out, in Count IV Wolding requests an injunction "removing [Clark] from the office of President and all other offices of the company as well as removing [Clark] from the Board of Directors" and "enjoin[ing] [Clark] from entering upon the premises of the companies, communicating with employees and officers of the companies, expending any money from the company funds, retaining attorneys at company expense." (Am. Compl. ¶¶ 92, 95.) Clark argues that such relief cannot be afforded in the corporations' absence, thus rendering the corporations indispensable parties under Federal Rule of Civil Procedure 19. Alternatively, Clark argues that Wolding fails to state a valid claim for injunctive relief because he is seeking relief that must be performed by the parties' corporations, but he has not joined the corporations in this action or alleged harm to the corporations specifically.

## IV. Applicable Law and Analysis

### A. Fraud

Wolding's fraud claim is premised on Clark's alleged statements encouraging Wolding to move to Florida and retire and promise that Wolding could return to the corporations in his former status if he so desired. (Am. Compl. ¶¶ 80-81.) Wolding alleges that these statements and promises were made in the Spring of 2007, and prior to Wolding's decision to cease active employment with the companies in May 2007. (*Id*.

8

¶¶ 27-30, 33.) Wolding alleges that Clark made these statements and promises "in bad faith using his promises as false tokens, knowing that his agreement and representations were false and making them for the purpose of inducing the reliance of Plaintiff on same, and on which Plaintiff did reasonably rely upon in both moving to Florida and retiring from the companies." (*Id*. ¶ 82.) Wolding claims that he has been damaged as a result of his reliance on Clark's promise in that he "has been barred from participating in his business as an employee, member of the Board of Directors, officer and shareholder" and "lost opportunities to sell his interest in the companies." (*Id*. ¶¶ 83-84.) Wolding alleges that this has caused him, *inter alia*, loss of salary, bonuses, benefits and dividends. (*Id*. ¶ 85.)

These allegations are sufficient to put Clark on notice of the misrepresentations underlying Wolding's fraud claim and to enable Clark to answer and address "in an informed way" Wolding's claim. *Coffey, supra*. Wolding therefore has satisfied Rule 9(b)'s requirements for pleading fraud. As Clark argues, however, Wolding's allegations do not set forth a material misrepresentation relating to past or existing facts which is generally required to demonstrate a claim of fraud. (Def.'s Supp. Mot. at 7 (citing *Cook v. Little Caesars Enterps., Inc.*, 972 F. Supp. 400, 410-411 (E.D. Mich. 1997) ("It is well settled . . . that under Michigan law, in order to establish fraud the statements alleged to be false must relate to past or existing facts, and not to a future promise or expectation.")) Nevertheless, Wolding responds that his allegations are sufficient to state a claim of fraud "by false token." This Court agrees.

"Future promises, along with statements pertaining to future events, generally cannot form the basis for a claim of fraud." *Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947, 964 (6th Cir. 2002) (unpublished opinion) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813 (1976); *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 750, 407 N.W.2d 6 (1987)). Promises to render future performance are normally considered contractual in nature, not the basis of a complaint for fraudulent misrepresentation. *Boston Piano and Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141, 147, 165 N.W.2d 856, 857 (1917). There is a narrow exception to this rule when the promise is "made without a present intention of performance, when the promise is given for the purpose of deceiving the promisee and influencing his conduct." *Connellan v. Himelhoch*, 506 F. Supp. 1290, 1297 (E.D. Mich. 1981) (citing *Ainscough v. O'Shaughnessey*, 346 Mich. 307, 78 N.W.2d 209 (1956); *Hi-Way Motor Co.*, 398 Mich. at 339, 247 N.W.2d at 817 ("Th[e 'false token'] exception pertains where, although no proof of the promisor's intent exists, the facts of the case compel the inference that the promise was but a devise to perpetrate a fraud"); *see also Thompson v. Paasche*, 950 F.2d 306, 312 (6th Cir. 1991) (citing *Van Marter v. Am. Fid. Life Ins. Co.*, 114 Mich. App. 171, 318 N.W.2d 679, 684 (1982) ("[U]nder Michigan law, one can be held liable for broken promises when one has, at the time of the promise, a then-existing bad faith intent to break the promise.")) Wolding adequately alleges facts sufficient to state a claim under this exception.

Clark additionally argues, however, that Wolding's claim of fraud fails because

any reliance by Wolding on Clark's statements and/or promises was not reasonable as they were directly contradicted by the parties' written agreement and because of the statute of frauds.[1] Wolding alleges that he "reasonably relied" on Clark's statements and promises (Am. Compl. ¶ 82), and the Court does not find the express terms of the written agreement on which Clark relies to be in conflict with Wolding's alleged misrepresentations. (*See* Def.'s Supp. Mot. Ex. A.) The Court also does not find the statute of frauds applicable to the alleged misrepresentations.

First, the agreement on which Clark relies is an agreement between Clark and Wolding, as shareholders of Look! Insurance Agencies, Inc., to waive written notice of the annual shareholder meeting, consent to the holding of the meeting, and approve the minutes attached thereto. (Def.'s Supp. Mot. Ex. A.) These minutes reflect the following: (1) Wolding's retirement from Look Insurance Agencies, Inc. and Look! No Fault Insurance Agency, Inc. as of July 1, 2007;[2] (2) Wolding's resignation from his position as Co-President; (3) his continuation on the Board of Directors and as a Shareholder; (4) Clark's receipt of Wolding's salary until Clark retires; (5) Clark's and

---

[1]The Court finds an issue with respect to whether the "agreement" attached to Clark's motion as Exhibit A is the agreement that Wolding refers to in his complaint (*see* Am. Compl. ¶ 29) and therefore whether it can be considered without converting Clark's motion to a summary judgment motion pursuant to Federal Rule of Civil Procedure 12(d). However, because the Court rejects Clark's argument that Exhibit A renders Wolding's reliance unreasonable, it finds it unnecessary to resolve this issue.

[2]According to the Amended Complaint, Look! Insurance Agencies, Inc. was formerly known as Look! No-Fault Auto Insurance Agencies, Inc. (Am. Compl. ¶ 15a.)

Wolding's continued receipt of dividends; and (6) Clark's assumption of the positions of Chairman, President, Director, Treasurer, and Secretary. (*Id*.) The agreement is silent with respect to the parties' other corporations and Wolding's ability or inability to return to his positions with the corporations, including Look! Insurance Agencies, Inc. (*Id*.) It does not contain an integration or merger clause. (*Id*.) On the other hand, Wolding's allegations suggest that he and Clark reached an oral agreement with respect to Wolding's retirement of which only a part was reflected in the minutes of the shareholder meeting attached to their written agreement. (Am. Compl. ¶¶ 29-31.)

With respect to Clark's statute of frauds argument, pursuant to Michigan law, "[a]n agreement that, by its terms is not to be performed within 1 year from the making of the agreement" must be "in writing and signed with an authorized signature by the party to be charged." Mich. Comp. Laws § 566.132(1)(a). The Michigan Supreme Court has advised that "[t]o determine whether an agreement comes within this section, the proper inquiry is whether the contract *is capable of* performance within one year of the agreement." *Dumas v. Auto Club Ins. Ass'n*, 473 Mich. 521, 533, 473 N.W.2d 652, 657 (1991) (emphasis added). Stated differently: "'The mere fact that the contract may or may not be performed within the year does not bring it within the statute. The rule is that if, *by any possibility*, it is capable of being completed within a year, it is not within the statute.'" *Id*. (quoting *Smalley v. Mitchell*, 110 Mich. 650, 652, 68 N.W. 978 (1896)).

Wolding's fraud claim is not premised on a promise of perpetual employment, as

12

Clark describes it in his pleadings. (Def.'s Mot. at 8; *see also* Def.'s Supp. Mot. at 7.) Instead, Wolding alleges that Clark promised him that he could return to the corporations in his former status if Wolding decided to come out of retirement. (Am. Compl. ¶ 81.) Two months into his retirement, Wolding could have decided that he wanted to return to active employment. Therefore, this promise was capable of being performed within one-year and therefore is not within the statute of frauds, Mich. Comp. Laws § 566.132(1)(a).

### B. Wolding's Request for Injunctive Relief

Clark argues that Wolding's request for injunctive relief necessitates the appointment of a receiver and directly impacts the rights and interests of the corporations at issue and, therefore, the corporations are indispensable parties pursuant to Federal Rule of Civil Procedure 19. Clark also contends that Wolding fails to state a valid claim for injunctive relief due to his failure to include the corporations in this action.

The Court is uncertain why Wolding continues to set forth his request for injunctive relief as a separate count when he indicated in response to Clark's initial motion and his counsel stated at the September 21, 2010 motion hearing that Count Four of the initial complaint should be "recast" as a prayer for relief *if* Wolding succeeds on any of his remaining counts. Nevertheless, the Court will not strike Wolding's request for injunctive relief because it finds that if Wolding prevails on his remaining counts he may be entitled to the injunctive relief that he seeks despite his failure to include the corporations in this action.

In Count Two of his Amended Complaint, Wolding asserts a claim against Clark pursuant to Michigan Compiled Laws Section 450.1489. This section provides, in relevant part:

> A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation *or to the shareholder*.

Mich. Comp. Laws § 450.1489(1) (emphasis added). The Michigan Court of Appeals has interpreted this provision as creating a direct, in comparison to a derivative, cause of action for shareholders who are abused by "controlling" persons. *Estes v. Idea Eng'g & Fabrications, Inc.*, 250 Mich. App. 270, 278, 649 N.W.2d 84, 89 (2002). In a direct action filed under Section 450.1489, unlike a derivative lawsuit, the corporation is not a necessary party. *See Bromley v. Bromley*, No. 05-71798, 2006 WL 1662552, at *2-4 (E.D. Mich. 2006) (rejecting the defendant's arguments that the plaintiffs' claim under Section 450.1489 was subject to dismissal based on the plaintiffs' failure to name as a party the corporation for which the plaintiffs were shareholders).

The plain language of Section 450.1489 also indicates that a cause of action can be brought under this section for injury to the shareholder, only. Mich. Comp. Laws § 450.1489(a); *see also Estes*, 250 Mich. App. at 282, 649 N.W.2d at 91 (quoting *Baks v. Maroun*, 227 Mich. App. 472, 501-06, 576 N.W.2d 413 (1998) (Hoekstra, J., dissenting)). Therefore, even if Wolding fails to allege an injury to the corporation as Clark argues,

14

this does not require the Court to strike or dismiss Wolding's request for injunctive relief.

Finally, Section 450.1489 sets forth a non-exclusive list of the relief courts may order "[i]f the shareholder establishes grounds for relief . . ." This list includes "[t]he dissolution and liquidation of the assets and business of the corporation" and "[t]he direction or prohibition of an act of the corporation or of shareholders, directors, officers, or other persons party to the action." Mich. Comp. Law §§ 450.1489(1)(a), (d). As courts have found, Section 1489 "'creates a statutory cause of action along with *flexible discretionary remedies* to shareholders of closely held corporations.'" *Bromley*, 2006 WL 1662552, at 3 (emphasis added) (quoting *Estes*, 250 Mich. App. at 278). "[T]his statutory cause of action for 'oppression' in favor of minority shareholders who are abused by 'controlling persons'" requires courts "to look at the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the purpose of the statute." *Id*. The Court believes that the injunctive relief sought by Wolding falls within the relief allowed under Section 450.1489 and therefore finds no basis at this time to strike this portion of Wolding's Amended Complaint.

## V. Conclusion

Based on the foregoing, the Court concludes that Wolding has not neglected to name necessary parties to this litigation and has stated "claims" in Counts Three and Four of his Amended Complaint on which relief may be granted. As Wolding previously represented, Count Four of his Amended Complaint should not be viewed as alleging an

15

independent claim on which he is seeking relief.  The Court therefore concludes that Wolding's Amended Complaint is not subject to dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) or (7).

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss and to strike is **DENIED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Michael J. Lebow, Esq.
Sean M. Walsh, Esq.
Paula Johnson-Bacon, Esq.