UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN WOLDING,

    Plaintiff,

v.                                                Case No. 10-10644
                                                Honorable Patrick J. Duggan

RICHARD CLARK,

    Defendant.

_____/

### OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND (2) DENYING PLAINTIFF'S EMERGENCY MOTION BASED UPON DISCOVERY OF NEW EVIDENCE

On February 12, 2010, Plaintiff John Wolding ("Plaintiff") filed this action against Defendant Richard Clark ("Defendant"), his partner in various "nonstandard auto insurance" corporations. In an Amended Complaint filed on September 28, 2010, Plaintiff alleges the following "claims" against Defendant: (1) violation of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*; (2) "violation of fiduciary duties and oppression of minority shareholder by controlling shareholder" pursuant to Michigan Compiled Laws Section 450.1489; (3) fraud; and (4) "injunctive relief against Defendant Clark." Pursuant to the parties' stipulation, the Court entered an order on July 12, 2011, allowing Defendant to file a counter-claim.[1] Presently before the Court is Defendant's

---

[1] In a counterclaim eventually filed on May 18, 2012, Defendant alleges that the parties are unable to agree on material corporate matters, rendering the corporations
                                                                                                                  (continued...)

motion for summary judgment with respect to Plaintiff's claims, filed pursuant to Federal Rule of Civil Procedure 56 on March 1, 2012. After receiving several extensions of time to do so, Plaintiff filed a response to the motion on April 15, 2012. Defendant filed a reply brief on May 4, 2012, and the Court held a motion hearing on May 17, 2012. Also before the Court is an emergency motion filed by Plaintiff one week before the motion hearing. For the reasons that follow, the Court grants Defendant's motion and denies Plaintiff's motion.

I.      **Factual Background**[2]

---

[1](...continued)
incapable of functioning effectively. (Doc. 72 ¶¶ 17-19.) Defendant therefore seeks to invoke Michigan Compiled Laws § 450.1823 and purchase Plaintiff's shares of the corporations at fair market value. (*Id*.)

[2]Plaintiff's counsel did not comply with the Local Rules for the Eastern District of Michigan when it submitted the pleadings in response to Defendant's motion, resulting in the Court having to hunt for the evidence cited in support of Plaintiff's factual assertions in the almost 900 pages of exhibits attached to his response brief. The Local Rules required Plaintiff's counsel to provide the Court with a courtesy copy of Plaintiff's response brief "and *all accompanying exhibits* . . . ." Rule 5(b) to the Appendix ECF to the Local Rules (emphasis added). Rule 5(b) further required Plaintiff's counsel to "properly tab[]" all exhibits. *Id*. Plaintiff's counsel not only failed to provide the Court with a courtesy copy of Plaintiff's ninety-five (95) exhibits, but the manner in which counsel's office electronically filed those exhibits further exacerbated the Court's ability to readily locate his evidence. On the docket, Plaintiff's counsel filed multiple exhibits (sometimes as many as fifty) under a single exhibit identifier and without a narrative description. The Local Rules instead require:

> The filing user must prepare an index of exhibits and file the index as the first attachment to the paper. Each exhibit must be described on the index both by an exhibit identifier and by a brief narrative description. See Sample Index of Exhibits (EXHIBIT B). . . . <u>Each exhibit</u> must then be

(continued...)

Plaintiff and Defendant are equal (50%-50%) shareholders in a number of closely held Michigan corporations, which they formed between 1993 and 1996 to sell sub-standard or high risk automobile insurance and to sell and manage "Look!" insurance franchises. The corporations are: (1) SR Corporation of Canton, Inc. ("SR Corporation") (f/k/a 6022 North Sheldon Road Corporation); (2) A Cherry Hill Corporation ("Cherryhill Corporation") (f/k/a 32620 Cherryhill Corporation); (3) Look! Insurance Agencies, Inc. (f/k/a Look! No-Fault Auto Insurance Agencies, Inc.); (4) Look! Advertising Fund, Inc. (f/k/a Look No-Fault Auto, Inc.); (5) LIAC, Inc.; and (6) Look! Printing, Inc. (Def.'s Mot. Exs. A-G.) For ease of reference, the Court will refer to the entities collectively as "Look!" except where the name of the individual corporation is relevant. From 1993 through 2001, Plaintiff and Defendant participated in Look! as co-employees, -officers, and -directors.

Plaintiff's wife died in 2001, and he re-married a woman from California in April

---

$^2$(...continued)
filed and identified as a <u>separate attachment</u> to the paper, and must be labeled in the electronic record with an exhibit identifier and brief narrative description.

Rule 18(b) to the Appendix ECF (emphasis added).

The Court wasted significant resources searching to find Plaintiff's exhibits as a result. Although the Court is grateful for defense counsel's compliance with these rules, the Court notes that Defendant's counsel should use more care in citing exhibits, as the cited testimony on several occasions was found on pages other than that which was cited, (*see, e.g.*, Def.'s Br. in Supp. of Mot. at 5 citing Ex. H at 40, at 6 citing Ex. H at 30) and on more than one occasion, the cited exhibit did not relate to the factual assertion for which it was cited. (*See, e.g., id*. at 6 citing Ex. Q.)

2002.  Plaintiff and his new wife, Susan Wolding, took an extended vacation to Florida in late 2002, and purchased a home there in 2003.  Defendant believes that Plaintiff did little or nothing to manage Look! or promote Look! franchises following his move to Florida.  (Def.'s Mot. Ex. H at 50-51.)  Plaintiff maintains that he traveled from Florida to Michigan whenever he was needed, and for however long he was needed, when something arose at Look!.  He also conducted work via telephone.

While living in Florida, Plaintiff received his full salary as an officer of Look! and the same shareholder distributions as Defendant.  This money was paid to Plaintiff, as it was to Defendant, through Cherryhill Corporation.  In late 2006, however, Defendant told Plaintiff that Look! would no longer pay Plaintiff's salary unless he returned to work.  Plaintiff decided to retire and, at the January 5, 2007 annual meeting of shareholders, he and Defendant began to negotiate an agreement concerning the terms of Plaintiff's retirement from Look!.  On January 3, 2008, Plaintiff and Defendant executed a Waiver, Consent and Approval of Shareholder's Meeting of the Look! entities, which memorialized the parties' agreement and outlined the terms of Plaintiff's retirement effective July 1, 2007.  (Def.'s Mot. Exs. M, N.)

Pursuant to the Waiver, Consent and Approval of Shareholder's Meeting of the Look! entities, Plaintiff resigned from his position as co-president but retained his position on the Board of Directors and as a shareholder.  (*Id*. Ex. M.)  Upon Plaintiff's retirement, Defendant is indicated as holding the positions of Chairman, President, Director, Treasurer and Secretary, and of receiving Plaintiff's salary until Defendant also

retires.[3] (*Id*.)

Plaintiff alleges that Defendant fraudulently induced him to retire by promising Plaintiff that he could return to Look! whenever he desired. (*See* Pl.'s Am. Compl. ¶¶ 80-81.) This "term" is not included in the Waiver, Consent and Approval of Shareholder's Meeting of the Look! entities that the parties executed on January 3, 2008, and Plaintiff concedes that it is not memorialized in any written agreement between the parties. (Pl.'s Resp. Ex. 60-11 at 137-38.) Plaintiff contends, however, that Defendant told him on the day Plaintiff signed the above document: "We're partners. You try it out. If you don't like it, come on back." (*Id*. at 136.)

In December 2008, Plaintiff divorced Susan Wolding and went to live in Europe for five and a half months. In January 2009, Plaintiff contacted Henry Beausejour II, Look's Vice President of Marketing and Defendant's son-in-law, and requested corporate financial information because Plaintiff's son was attempting to locate a buyer for Plaintiff's interest in Look!. (Def.'s Mot. Ex. H at 30, Ex. O.) Plaintiff's son was provided Look!'s tax returns. (*Id*. Ex. H at 30.)

On July 27, 2009, Plaintiff wrote Defendant a letter requesting that he "be given

---

[3]Plaintiff alleges in his Amended Complaint that he and Defendant agreed that in the event either of them became eligible for social security benefits and decided to stop active employment, the retired individual would continue to receive dividends but would no longer receive a salary. (Am. Compl. ¶ 29.) Plaintiff further alleges that he and Defendant agreed that the remaining shareholder in that instance would receive additional compensation for undertaking additional employment responsibilities. (*Id*.) According to the January 3, 2008, Waiver, Consent and Approval of Shareholder's Meeting, Plaintiff was drawing social security as of July 1, 2007. (Def.'s Mot. Ex. M.)

full access and supplied . . . in electronic form or hard copy . . . all of the companies [sic] records." (Def.'s Mot. Ex. P.) Apparently questioning Plaintiff's right as shareholder and board member to the documents requested, Defendant forwarded the request to Look!'s corporate counsel at Bodman, LLP, and asked the firm to respond to Plaintiff's request. (Pl.'s Resp. Exs. 66-69.) On August 7, 2009, David Walters, a lawyer at Bodman, sent Plaintiff a letter responding to his document request. (*Id.* Ex. 69.) The letter indicates that certain documentation had been or was being provided to Plaintiff, but that Plaintiff had no right to company newsletters as a shareholder or director. (*Id.*) Commenting on Plaintiff's direct communications with company employees and officers and attempts to provide direction to company employees, Mr. Walters advises Plaintiff that such contact is inappropriate, not authorized by his position as shareholder or director, and disruptive of Look!'s ability to conduct its business operations.[4] (*Id.*)

Plaintiff hired an attorney, Thomas Pagett, who negotiated the production of documents from Look! with Look!'s counsel during the second half of 2009. Look! produced approximately 6000 indexed documents to Plaintiff in response to his requests. (Def.'s Mot. Ex. H at 190-98, Ex. R.)

---

[4]Plaintiff utilizes considerable space in his response brief addressing Defendant's, Look!'s, and/or Look!'s counsel's refusal to provide him with Look! newsletters and disputing the assertion that he inappropriately communicated with and attempted to direct Look! employees. (*See* Pl.'s Resp. Br. at 7-11.) He also spends considerable time relating the attorney work product Bodman prepared in advising Look! on its response to Plaintiff's request for documents. (*See id.* at 7-14.) Plaintiff, however, fails to demonstrate in all of this discussion how this information is relevant to his claims. Thus the Court is not including these factual assertions herein.

At some point in 2009, Plaintiff sought to return to Look! as an active officer and employee. Defendant responded in a letter dated November 18, 2009:

> If you decide that you want to come out of retirement, I'm happy for you. But as for Look! Insurance and its affiliates you will not be able to return to work for them. However, if you choose to sell your shares you can do that. If you decide to make an offer to me I will listen. Whatever you chose to do, I wish you the very best.

(Doc. 69 Ex. 1.)

A meeting of Look!'s Board of Directors was held on June 7, 2011, which Plaintiff and Defendant (among others) attended. At the meeting, Plaintiff and Defendant were not able to agree on a single point concerning Look!, including the election of officers or a future business plan. (Def.'s Mot. Ex. S.)

## II.   Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the "nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

### III. Applicable Law and Analysis

As set forth earlier, Plaintiff alleges four "claims" against Defendant: (1) violation of the federal Fair Credit Reporting Act ("FCRA"); (2) "violation of fiduciary duties and oppression of minority shareholder by controlling shareholder" pursuant to Michigan Compiled Laws Section 450.1489; (3) fraud; and (4) "injunctive relief." Only Plaintiff's first, second, and third claims require analysis. This Court previously made clear that Plaintiff's fourth "claim" does not set forth a cause of action. (*See* Doc. 16 at 13.)

#### A. Fraud

As indicated in the factual background section, Plaintiff alleges in his initial and amended complaints that Defendant fraudulently induced him to retire by promising that Plaintiff could return to Look! whenever he desired. (*See* Pl.'s Am. Compl. ¶¶ 80-81.) In

8

response to an earlier motion to dismiss, Plaintiff contended that he is asserting a claim of fraud "by false token." Prior to the hearing on the pending motion for summary judgment, this Court assumed Plaintiff had abandoned this claim because, in response to the motion, Plaintiff neither addressed Defendant's arguments as to why the claim fails nor presented evidence to create a genuine issue of material fact with respect to the elements of this claim. *See Anglers of the Au Sable v. U.S. Forest Service*, 565 F. Supp. 2d 812, 839 (E.D. Mich. 2008) (citing cases to find it "well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment"). At the motion hearing, however, Plaintiff's counsel cited a portion of Plaintiff's deposition testimony to show that Defendant made the alleged promise.

To allege a claim of fraud under Michigan law, a plaintiff must show (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reasonable reliance upon it; and (6) the plaintiff suffered damage. *Cummins v. Robinson Twp.*, 283 Mich. App. 677, 770 N.W.2d 421, 435 (Mich. Ct. App. 2009). "Future promises, along with statements pertaining to future events, generally cannot form the basis for a claim of fraud." *Busch v. Dyno Nobel, Inc.*, 40 F. App'x 947, 964 (6th Cir. 2002) (unpublished opinion) (citing *Hi-Way Motor Co. v. Int'l Harvester Co.*,

9

398 Mich. 330, 336, 247 N.W.2d 813 (1976); *Van Tassel v. McDonald Corp.*, 159 Mich. App. 745, 750, 407 N.W.2d 6 (1987)). Promises to render future performance are normally considered contractual in nature, not the basis of a complaint for fraudulent misrepresentation. *Boston Piano and Music Co. v. Pontiac Clothing Co.*, 199 Mich. 141, 147, 165 N.W.2d 856, 857 (1917). There is a narrow exception to this rule when the promise is "made without a present intention of performance, when the promise is given for the purpose of deceiving the promisee and influencing his conduct." *Connellan v. Himelhoch*, 506 F. Supp. 1290, 1297 (E.D. Mich. 1981) (citing *Ainscough v. O'Shaughnessey*, 346 Mich. 307, 78 N.W.2d 209 (1956); *Hi-Way Motor Co.*, 398 Mich. at 339, 247 N.W.2d at 817 ("Th[e 'false token'] exception pertains where, although no proof of the promisor's intent exists, the facts of the case compel the inference that the promise was but a devise to perpetrate a fraud."); *see also Thompson v. Paasche*, 950 F.2d 306, 312 (6th Cir. 1991) (citing *Van Marter v. Am. Fid. Life Ins. Co.*, 114 Mich. App. 171, 318 N.W.2d 679, 684 (1982) ("[U]nder Michigan law, one can be held liable for broken promises when one has, at the time of the promise, a then-existing bad faith intent to break the promise.")).

In the motion for summary judgment, Defendant argues that Plaintiff's fraud claim fails because any reliance by Plaintiff on Defendant's alleged fraudulent statement was not reasonable. This is because Plaintiff inserted a provision allowing the parties to return to their positions following their retirement in a draft agreement which he submitted to Defendant and, as Plaintiff acknowledges, Defendant rejected: "I tried to put

10

things into that retirement agreement that– to definitely make sure things were fair. It was rejected because it was too complicated. This is all that he would allow. I would not expect anything else to be allowed." (Def.'s Mot. Ex. H at 51.) It also is because, according to Plaintiff's deposition testimony, Defendant also was "badgering" Plaintiff at this time, leaving Plaintiff with the feeling that did not really have any choice but to retire, with such statements as: "You're not working here anymore. You're not productive. You're not doing anything. I'm just going to pay you the dividends. Just go away." (*Id.* at 52.)

Even if the Court considers Plaintiff's counsel's belated citation to Plaintiff's deposition testimony at the motion hearing to find that the alleged promise was made, Plaintiff nevertheless has not responded to Defendant's remaining arguments as to why his fraud claim fails. Moreover, having reviewed the record, the Court sees no evidence by which Plaintiff could show that, at the time the alleged promise was made, Defendant had a bad faith intent to break it. For these reasons, the Court is granting summary judgment to Defendant on Plaintiff's fraud claim.

    **B.    FCRA**

Plaintiff's FCRA claim does not require lengthy analysis. Plaintiff alleges that Defendant violated the FCRA by obtaining or having Look!'s corporate counsel obtain Plaintiff's credit report. The only evidence Plaintiff cites in support of this claim is an August 25, 2009 entry in Bodman's billing invoices, providing:

    8/25/09 Office discussion between Ms. Durant and Mr. Walters [attorneys

> at Bodman] regarding consumer credit reporting issue.
>
> Review by Mr. Walters of Fair Credit Reporting Act.
>
> Telephone conference between Mr. Walters and Ms. Edel re follow-up with respect to document production; credit report on Mr. Wolding, issues re same.

(Pl.'s Resp. Ex. 87.) Plaintiff argues that this entry is sufficient to create an inference that Defendant or Bodman obtained Plaintiff's credit report. This Court cannot agree.

Even when viewed in a light most favorable to Plaintiff, this evidence shows at most only that there may have been some discussion and/or research regarding the legality of obtaining Plaintiff's credit report. It fails to show that a credit report actually was obtained. In fact, Mr. Walters [Look!'s corporate counsel at Bodman] testified at his deposition in this matter that Look!'s Chief Financial Officer, C. Lynn Edel, inquired about the propriety of pulling Plaintiff's credit report and, after his firm conducted some research on the issue, he advised her not to do so. (Def.'s Mot. Ex. W at 163-64.) Defendant testified during his deposition in this matter that a credit report for Plaintiff in fact was not obtained by Look!. (Def.'s Mot. Ex. I at 254.) As Plaintiff fails to present any evidence to show that Defendant or anyone at Defendant's direction obtained such a report, Defendant is entitled to summary judgment with respect to Plaintiff's FCRA claim.

### C. Michigan Compiled Laws § 450.1489

Michigan law permits a shareholder to sue for acts of the directors or those in control of the corporation which are "illegal, fraudulent, or willfully unfair and oppressive

to the corporation or to the shareholder." Mich. Comp. Laws § 450.1489(1). "Willfully unfair and oppressive conduct" is defined in the statute as:

> a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure.

*Id*. § 450.1489(3). Defendant seeks summary judgment with respect to this claim, arguing that Plaintiff fails to offer evidence of "illegal, fraudulent, or willfully unfair and oppressive" conduct by Defendant.

In his Amended Complaint, Plaintiff identifies a dozen actions as examples of conduct violating the statute.[5] (Pl.'s Am. Compl. ¶ 39.) Defendant raises several

---

[5]The acts identified in the Amended Complaint are:

a. changing insurance coverage;
b. improperly reimbursing or paying for Defendants [sic] medical bills without authority;
c. refusal to supply documents necessary for Plaintiff to monitor the operation of the companies and or [sic] determine the value of his interest in the companies;
d. [p]re-payment of expenses in contravention to previous policy having the effect of overstating payables and reducing dividends payable to Plaintiff;
e. charging Plaintiff for copies of documents Plaintiff was entitled to receive, including the cost of photocopies and attempting to charge for employee time in making such copies;
f. delaying payment of dividend checks to Plaintiff;
g. unilaterally declaring, and reducing dividends without Board of Directors

(continued...)

arguments in his motion for summary judgment as to why these actions do not constitute "illegal, fraudulent, or willfully unfair and oppressive" conduct under the statute. (Def.'s Br. in Supp. of Mot. at 13-21.) Although the quality of Plaintiff's response brief makes it difficult to say for sure, it appears from Plaintiff's brief that he has abandoned all but three of the actions identified in his Amended Complaint: Defendant's (1) refusal to provide Plaintiff with financial information concerning Look!; (2) reduction of distributions; and (3) diversion of business cash (by prepaying expenses and opening two new company built and owned franchise stores) and thereby reduction of the apparent value of Look!. In his response brief, Plaintiff further adds Defendant's precluding Plaintiff from participating in the governance of Look! and the borrowing of money from Look! Insurance Agencies, Inc. for SR Corporation, at no interest and without a promissory note or security. The Court therefore is presuming that these five actions are the only conduct that it needs to address to determine whether summary judgment should

---

$^5$(...continued)
[sic] approval;
h. employing relatives of Defendant at inflated rates of pay and/or without Board of Directors [sic] authority;
i. using employees of the companies for personal matters;
j. directing corporate counsel [to] provide services to Defendant which were personal in nature and were not on behalf of the companies;
k. directing corporate counsel to justify the Defendant's refusal to supply documents to him; and
l. directing corporate counsel to conduct an investigation into Plaintiff's activities in the State of Florida.

(Am. Compl. ¶ 39.)

or should not be granted with respect to this claim.

With respect to Plaintiff's request for Look!'s financial records, he fails to show that he did not receive all of the records to which he is entitled as a shareholder and Board member (and more) before this lawsuit was initiated. In fact at the motion hearing, Plaintiff's counsel conceded that Plaintiff received "everything." Initially, Plaintiff requested "all of the companies [sic] records." (Def.'s Mot. Ex. P.) Believing that this request was over-broad for entities that had been operating for sixteen years, Defendant sought guidance from Look!'s corporate counsel as to which records Plaintiff was entitled to receive and asked corporate counsel to resolve with Plaintiff's counsel any disputes regarding the document production. Plaintiff fails to identify any records that he requested but did not receive before this lawsuit was initiated, much less any records he was entitled to receive as a shareholder and Board member.

With respect to the building and opening of two company-owned franchises, Defendant shows that this was part of a business plan that (1) Plaintiff has acknowledged was presented to him during an annual shareholder meeting (*see* Def.'s Mot. Ex. F and Ex. B at 164-65)[6]; and (2) cannot be shown to have impacted Plaintiff's distributions. Look! invested in the company-owned stores in Southfield and Port Huron when one of its competitors lost its contract in those market areas. (Def.'s Mot. Ex. H at 82-83.)

---

[6]This evidence contradicts Plaintiff's assertion in his response brief that Defendant caused to build and staff two new "spec" stores "unilaterally . . . without consulting the board or [Plaintiff]." (*See* Pl.'s Resp. Br. at 19.)

Plaintiff also complains that SR Corporation borrowed money from Look! Insurance Agencies, Inc. to pay for the stores and that the loan was not secured and did not show up on the corporate books as a loan. He fails to show, however, how this loan negatively and disproportionally impacted him. Importantly, Plaintiff shares an equal interest with Defendant in the corporation that loaned the money and the corporation that received the loan. This critical fact distinguishes the present case from the one on which Plaintiff relies to argue that "the granting of 'unsecured, interest-free, inter-affiliate advances on an as-needed basis . . .' are breaches of the controlling Defendant's duties to the corporation and other shareholders." (Pl.'s Resp. Br. at 30, citing *Weiner v. Weiner Inter Vivos Trust*, No. 1:06-CV-642, 2008 WL 746960, at \*1, 9 (W.D. Mich. Mar. 18, 2008) (unpublished opinion).) In *Weiner*, the defendant extended interest-free, unsecured loans from entities he jointly owned with the plaintiff to entities in which the plaintiff did not hold an interest. *Weiner*, 2008 WL 746960, at \*9 (finding that the plaintiff presented a prima facie case to show that the defendant breached his fiduciary duties by engaging in self-dealing when he arranged loans from jointly owned entities to entities in which the plaintiff did not hold an interest).

Plaintiff fails to demonstrate that the remaining actions on which he relies for his minority shareholder oppression claim were illegal, fraudulent, or willfully unfair and oppressive. Plaintiff voluntarily retired from Look! and voted to approve the minutes from the January 5, 2007 annual meeting at which *he* voted to accept his retirement, his resignation as co-president of Look!, Defendant's appointment to the positions of

16

Chairman, President, Director, Treasurer, and Secretary, and Defendant's receipt of Plaintiff's salary until Defendant retires. (Def.'s Mot. Ex. M.) Plaintiff does not establish that he had a right (for example, pursuant to an agreement or the corporate bylaws) to return to those positions absent agreement by a majority of the shareholders. The pre-payment of expenses that allegedly reduced distributions impacted Plaintiff and Defendant proportionally.[7] Finally, to the extent such advance payments reduced the apparent fair market value of Look!, Plaintiff has not been harmed as he has not agreed on a purchase price for his shares of the entities and he now is aware that the payments were made.[8]

In short, Plaintiff fails to demonstrate actions by Defendant which interfered with Plaintiff's interest as a shareholder. Defendant therefore is entitled to summary judgment with respect to Plaintiff's claim under Michigan Compiled Laws Section 450.1489.

## IV. Emergency Motion

As indicated earlier, on May 10, 2012, Plaintiff filed an emergency motion in which he seeks: (1) an amendment to the scheduling order to permit the listing of an additional expert witness regarding the impact of the alleged improper prepayments on

---

[7] Defendant also correctly points out that Plaintiff fails to show how the prepayment of certain expenses interfered with distributions.

[8] Relying on the CFO's deposition testimony, Plaintiff claims that in 2011, Look! prepaid $500,000 in 2012 expenses. Defendant replies, however, that the CFO clarified her testimony further in her deposition indicating that Look! had a practice of pre-paying expenses and that the prepayment amount increased only $200,000 for 2011. (Def.'s Mot. Ex. H at 139.)

the value of Look!; (2) an extension of discovery to investigate "financial irregularities" (i.e. prepayment of expenses) of Look!; (3) an order requiring Defendant and Look! "to correct the books and records of Look to properly disclose the transactions described above" and to account for all financial transactions occurring from 2010 to present as pertaining to undisclosed or under-disclosed expenses and payments; (4) an order requiring Defendant to refrain from interfering with Plaintiff's access to the companies' offices and records; (5) an order requiring that Look! be jointly managed by the parties until resolution of this case, with both parties receiving equal salaries and benefits; and (6) scheduling a hearing to determine if Defendant should be immediately removed from active control of Look! and whether a receiver should be appointed. Defendant filed a response to the motion indicating, *inter alia*, that Plaintiff was aware of the information that precipitated the emergency motion prior to Defendant's filing of its summary judgment motion and that the emergency motion is simply a tactic to delay a ruling on that motion.

The "new" information outlined in Plaintiff's emergency motion is contained in his response to Defendant's motion for summary judgment. It does not impact the Court's resolution of that motion. Nor would any of the information Plaintiff seeks to uncover through further discovery. Based on the Court's ruling with respect to the summary judgment motion, it finds no basis to grant the remaining relief requested in the emergency motion. For these reasons, the motion is being denied.

Accordingly,

18

**IT IS ORDERED**, that Defendant's Motion for Summary Judgment is **GRANTED**;

**IT IS FURTHER ORDERED**, that Plaintiff's Emergency Motion Based Upon Discovery of New Evidence is **DENIED**.

Dated: June 28, 2012                s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:
Michael J. Lebow, Esq.
Sean M. Walsh, Esq.
Paula Johnson-Bacon, Esq.